**SO ORDERED.**

**SIGNED this 09 day of April, 2010.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion not designated for print publication or on-line use
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: TEAM KC, INC.,<br><br>DEBTOR. | CASE NO. 09-24233<br>CHAPTER 11 |

### MEMORANDUM OPINION AND ORDER GRANTING
### DOMINO'S PIZZA FRANCHISING, LLC'S MOTION FOR RELIEF FROM STAY

Domino's Pizza Franchising, LLC (hereafter "Domino's") moves for relief from stay under 11 U.S.C. § 362(d)(1) to enforce the post-termination provisions of allegedly terminated franchise agreements with Team KC, Inc. (hereafter"Debtor"). The motion was filed January 29, 2010. Debtor objected, and a non-evidentiary hearing was held on February 19, 2010, after which the Court took the matter under advisement. Domino's appears by David P. Eron of Eron Law Office, P.A. and Eric S. Goldstein of Shipman & Goodwin, LLP. Debtor appears by Colin N. Gotham of Evans & Mullinix, P.A. There are no other appearances. This is a core proceeding over which the Court has jurisdiction.

**FINDINGS OF FACT.**

This case is a companion to *Tornado Pizza, LLC*, case no. 9-24232 (hereafter "*Tornado*"). The president of Debtor is the managing partner of Tornado. The business of both Debtors is the ownership and operation of Domino's Pizza stores. As to both Debtors, Domino's seeks relief from stay to enforce the post-termination provisions of Franchise Agreements with the Debtors, which Domino's alleges were terminated prepetition. The facts and legal analysis in both cases are very similar.

The material facts are uncontroverted. On or about March 27, 2008, Debtor and Domino's entered into five identical Standard Franchise Agreements authorizing Debtor for a period of 10 years to operate Domino's Pizza store at five locations in Kansas within the greater Kansas City Metropolitan area. The store locations are: 10240 W. 75th Street, Merriam, KS 66204; 705 E. Sante Fe, Olathe, KS 66061; 5554 Hedge Lane Terrace, Shawnee, KS 66217; 11036 Quivira, Overland Park, KS 66216; and 15001 Metcalf, Overland Park, KS 66223. The Franchise Agreements granted the Debtor a limited, non-exclusive license to use Domino's trademarks, service marks, and commercial symbols in connection with its operation of Debtor's Domino's Pizza Stores.

Prepetition Debtor defaulted in making monetary payments due under the Franchise Agreements. Section 6.1 of the agreements requires Debtor to pay certain royalty payments on a weekly basis calculated as a percentage of the weekly sales of each store, and section 13.1 required weekly payments calculated in the same manner to the Advertising Fund. In the year prior to November 23, 2009, Debtor failed to make the royalty and advertisement payments in full for at least 12 out of the 52 weeks. Section 15.2 of the agreements requires Debtor to pay

2

Case 09-24233    Doc# 65    Filed 04/09/10    Page 2 of 8

when due any amount owed to Dominos's, its affiliates and subsidiaries, or any other creditor or supplier of its Domino's Pizza stores. In the year prior to November 23, 2009. Debtor repeatedly failed to pay Domino's, or to affiliates or subsidiaries, for invoices related to electronic orders placed via Domino's website, the use of Domino's PULSE Store Computer System, and the provision of food and supplies.

As a result of these monetary defaults, Domino's sent Debtor notices of default dated December 12, 2008 (five notices, one for each location), February 11, 2009 (five notices, one for each location for defaults after the prior notices), and April 29, 2009 (one notice with an attachment enumerating the five locations for defaults after the prior notices). Each of the notices enumerated in detail the particular default associated with each franchise and advised that Debtor had 10 days to cure the default. Domino's states that "to date, most of the defaults described in the Notices of Monetary Defaults have not been cured."[1] Debtor states it is "without sufficient information to verify that the defaults have not been cured."[2]

Prepetition Debtor also defaulted with respect to operational and quality control provisions of the Franchise Agreements. Section 15.1 of the Franchise Agreements provides that, among other things, Debtor agrees to fully comply with Domino's specifications, standards, operating procedures, and rules from time to time prescribed for the operation of a Domino's Pizza Store. By notice of default dated May 28, 2009, Domino's informed Debtor that it had failed to comply with the operating requirements as to the Olathe Store by not properly managing dough, not using products within their designated shelf-life, not maintaining the

---

[1] Doc. 33, p. 6.

[2] Doc. 46, p.2.

exterior of the store, and safety and security measure. The notice advised that Debtor had 30 days, until June 30, 2009, to cure the default. The record is silent as to whether this default was cured.

On or about June 2009, Domino's publicized a new standard for the operation of Domino's Pizza stores, which became effective August 1, 2009, relating to obtaining criminal background checks of employees from an approved vendor. By five notices of default dated November 4, 2009, Domino's informed Debtor that it was in default of Section 15.1 of the Franchise Agreements for failure to comply with the criminal background check for all of its stores. The notices advised Debtor that it had thirty days, until December 7, 2009, to cure the default.

Section 18.2.1(l) of the Franchise Agreements permits Domino's to immediately terminate the Franchise Agreements, effective upon delivery of a notice of termination, if the Debtor fails on three or more occasions in a twelve month period to comply with one or more provisions of the Franchise Agreements whether or not such violation is corrected after the notice of noncompliance is sent. By letters dated November 20, 2009, Domino's informed Debtor that the five Franchise Agreements were terminated under section 18.2.1(l) effective November 23, 2009. Each notice enumerated the above described notices of default which had been sent as to the particular Franchise Agreement in issue, including the three notices of financial default as to all five locations, the November 4, 2009 notices of operational default as to all five locations, and the May 28, 2009 notice of operational default applicable to the Olathe store. For example the notice of termination for the Merriam, Kansas store stated in part:

> This letter shall serve as official notification of termination of the
> Standard Franchise Agreement dated March 27, 2008 for Store

#6300 (the "Franchise Agreement") located at 10240 W. 75th St., Merriam, KS 66204 (the "Store") by and between TEAM KC, INC and Domino's Pizza Franchising LLC ("DPF") and all franchise rights thereunder. **The termination of the Franchise Agreement is effective November 23, 2009.**

Pursuant to Section 18 ("TERMINATION AND EXPIRATION') of the Franchise Agreement, this termination is based on your failure on three (3) or more occasions during any twelve (12) month period to comply with any one or more provisions of the Franchise Agreement, whether or not such failure to comply is corrected after notice is delivered to you. Specifically, your failures to comply with the Franchise Agreement were described in our official notifications of default dated December 12, 2008 (financial), February 11, 2009 (financial), April 29, 2009 (financial) and November 4, 2009 (operational).

The November 20, 2009 notices of termination also included an agreement by Domino's to stay enforcement of the termination of the agreements through December 23, 2009 for the purpose of allowing Debtor time to sell the store. They state:

> **However, [Domino's] hereby agrees to stay legal proceedings to enforce the termination, until December 23, 2009.** This will afford you the opportunity to sell your Store to a purchaser who is acceptable to [Domino's], while also preserving the rights of [Domino's] under the Standard Franchise Agreement. [Domino's] agreement to stay enforcement of the termination is specifically conditioned on, among other things, its option to purchase the assets of the Store being extended by a corresponding period of time. During the stay, the Store must be operated in accordance with the terms and conditions of the Franchise Agreement and the time within which [Domino's] may exercise its option to purchase the assets of the Store will not begin to run. If you fail to comply with the Franchise Agreement, [Domino's] reserves the right to immediately and unilaterally lift the stay and enforce the termination.

Debtor has made post-termination payments to Domino's in excess of $100,000 per month.

On December 22, 2009, Debtor filed a voluntary petition under Chapter 11. By letter dated December 23, 2009, Domino's agreed to continue the stay of enforcement of the

5

terminations through January 23, 2010. To date, Debtor has not sold any of its Domino's Pizza Stores.

On January 29, 2010, Domino's filed for relief from stay under 11 U.S.C. § 362(d)(1). Debtor opposes the motion for relief. A non-evidentiary hearing was held on February 19, 2010. Neither of the parties requested an evidentiary hearing, and the matter was taken under advisement.

**POSITIONS OF THE PARTIES.**

The positions of the parties in this case are identical to their positions in the related *Tornado* case. Domino's contends that it is entitled to relief from stay for cause under § 362(d)(1) to enforce the post-termination provisions of the Franchise Agreements. Domino's argues that cause exists because Debtor cannot assume the contracts to two reasons: (1) The Franchise Agreements were terminated effective November 23, 2009, one month before Debtor filed for relief on December 22, 2009; and (2) even assuming the agreements were not terminated prepetition, under § 365(c)(1) and applicable law, Domino's would need to consent to Debtor's assumption of the agreements, and Domino's does not consent. Debtor responds that cause does not exist because: (1) The Franchise Agreements were not terminated prior to Debtor's filing of its bankruptcy petition; (2) Debtor does not need Domino's consent to assume the agreements; and (3) Domino's has breached the agreements.

**ANALYSIS.**

The five Franchise Agreements in this case are for operation of Domino's stores in Kansas, and the material facts in this case are substantially identical to the facts relating to the Kansas franchises at issue in the related *Tornado* case. The Court therefore adopts and

incorporates by reference herein the analysis and conclusions stated in the Memorandum Opinion and Order Granting Domino's Motion for Relief from Stay in *Tornado*, with the exception of the discussion and analysis of Missouri law, including the Missouri Franchise Act.

**CONCLUSION.**

The Court therefore finds that as of the date of filing the Franchise Agreements were not executory contracts for purposes of § 365 since they had been terminated. The Court further finds to the extent that Domino's stay of legal proceedings to enforce the terminations gave rise to executory contracts, those contracts expired by the passage of time after Debtor filed for relief. With respect to the stores in issue, Debtor is not a party to any executory Franchise Agreements with Domino's and may not assume the Franchise Agreements. Cause therefore exists for Domino's to be granted relief from stay. Post-petition Debtor's has continued to operate the Domino's stores and use Domino's marks without authority from Domino's, and Domino's interests are not adequately protected. Relief from stay is therefore granted for Domino's to enforce the non-monetary post-termination provisions of the Franchise Agreements for the stores at the following locations: 10240 W. 75th Street, Merriam, KS 66204; 705 E. Sante Fe, Olathe, KS 66061; 5554 Hedge Lane Terrace, Shawnee, KS 66217; 11036 Quivira, Overland Park, KS 66216; and 15001 Metcalf, Overland Park, KS 66223. Pursuant to Federal Rule of Bankruptcy Procedure 401(a), this order granting relief from stay is stayed until the expiration of 14 days after entry.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be

7

entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###